U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED
JUL 1 9 2018
CLERK, U.S. DISTRICT COURT
By_____
Deputy

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

WILLIAM CHENAULT DAVIS, §
　　　　　　　　　　　　　　　§
　　　　　Petitioner, §
　　　　　　　　　　　　　　　§
v. § No. 4:17-CV-228-A
　　　　　　　　　　　　　　　§
LORIE DAVIS, Director, §
Texas Department of Criminal §
Justice, Correctional §
Institutions Division, §
　　　　　　　　　　　　　　　§
　　　　　Respondent. §

## OPINION AND ORDER

Before the court is the petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 filed by petitioner, William Chenault Davis, a state prisoner, against Lorie Davis, director of the Texas Department of Criminal Justice, Correctional Institutions Division (TDCJ), respondent. After having considered the pleadings and relief sought by petitioner, the court has concluded that the petition should be dismissed as time-barred.

## I. FACTUAL AND PROCEDURAL HISTORY

On October 23, 1992, in Tarrant County, Texas, Case No. 0449666D, a jury found petitioner guilty of murder and the trial court subsequently assessed his punishment at life imprisonment. (SHR01[1] 19, 30, doc. 10-1.) Petitioner appealed his conviction, but the Second District Court of Appeals of Texas affirmed the

---

[1] "SHR01" refers to the record of petitioner's state habeas proceeding in WR-29,072-01; "SHR02" refers to the record of his state habeas proceeding in WR-29,072-02; and "SHR04" refers to the record of his state habeas proceeding in WR-29,072-04.

trial court's judgment on January 13, 1994. (Id. at 21-28.) Petitioner did not pursue further direct review; thus, his conviction became final under state law thirty days later on February 12, 1994. See TEX. R. APP. P. 68.2(a); *Roberts v. Cockrell*, 319 F.3d 690, 694 (5th Cir. 2003). Petitioner also sought postconviction state habeas relief from his conviction by filing three state habeas-corpus applications. The first, filed on June 21, 1995, was denied by the Texas Court of Criminal Appeals on August 30, 1995, without written order.[2] (SHR01 at cover & 2, doc. 10-1.) The second, filed on August 24, 1995, was dismissed by the Texas Court of Criminal Appeals on April 9, 1997, as a subsequent application. (Resp't's Preliminary Answer, ex. A, doc. 10-2.) And, relevant to this action, his third, filed on January 30, 2012, was denied by the Texas Court of Criminal Appeals on August 24, 2016, without written order on the findings of the trial court. (SHR04 5, doc. 10-12; Action Taken, doc. 10-9.) This federal petition challenging his conviction is deemed filed on March 13, 2017. See led on February 8, 2016. See *Spotville v. Cain*, 149 F.3d 374, 377 (5th Cir. 1998).

This case involves the stabbing death of Jacqueline Hull. The evidence at trial was summarized by the state appellate court

---

[2]Under the so-called "prison mailbox rule," a prisoner's state habeas application is deemed filed when placed in the prison mailing system. *Richards v. Thaler*, 710 F.3d 573, 578-79 (5th Cir. 2013). Petitioner's state habeas applications however do not provide the dates they were placed in the prison mailing system. Thus, the prison mailbox rule is not applied to his state habeas applications.

as follows:

> On November 15, 1990, Detective Byington was called to investigate a crime scene in the 6800 block of Meadowbrook Drive. The crime scene consisted of an abandoned vehicle in a church parking lot, and the victim's body which was located across the street in a front yard, approximately fifty yards from the abandoned car. The victim had suffered forty-five stab wounds and numerous cut wounds. A medical examiner testified one or more of the wounds caused the victim's death, and that the victim had several defensive wounds on her left hand.
>
> The abandoned vehicle was found with the driver's door open and the remaining three doors shut. There were numerous bloodstains inside the car, and there were drops of blood on the pavement just outside the driver's door. There was also a bag of white, powdery substance lying in the threshold of the driver's door. The evidence at the scene indicated that the victim was initially stabbed in the car, and that the stabbing continued after the victim got out of the car, probably even in the front yard where the body was found.
>
> After further investigation of the offense, the detective obtained a warrant for [petitioner]'s arrest. Following the arrest, Detective Byington had three conversations with [petitioner] concerning the offense. The first conversation was not reduced to writing, but the second and third conversations resulted in written statements which were admitted into evidence at trial.
>
> In [petitioner]'s first written statement, be claims to have introduced the victim, "Jackie," to a man named Wake Feeney on the day before she was killed. The purpose of introduction was to facilitate a $3,600 purchase of speed by Jackie from Feeney.
>
> According to [petitioner]'s statement, he, Jackie, and Feeney were all present in Jackie's car in the church parking lot during the late evening hours of November 14, 1990. When the exchange of drugs and money took place, [petitioner] was in the front passenger's seat, Jackie was in the driver's seat, and Feeney was in the back seat. When Feeney asked Jackie if all the money was there, she supposedly told him that she had left half with a friend at a 7-11 store. [Petitioner]

3

claims that Feeney then became angry and hit him in the head, and that when [petitioner] raised his hands to protect himself, his little finger was cut. At this point, [petitioner] claims to have jumped out of the car and fled on foot, hearing Jackie screaming as he ran down the road. [Petitioner] alleges that he ran all the way home, and that later that night he saw Feeney drive by his house, at which point he called the police and told them he had a prowler.

In his second written statement, [petitioner] claims his previous statement "was the truth but not complete." In this statement, [petitioner] states that when Jackie told Feeney that she only had half of the money with her, Feeney grabbed her hair with his left hand and pulled her toward the back seat. [Petitioner] claims that Feeney then began stabbing Jackie with a knife. [Petitioner] alleges he verbally protested and that when he reached back to stop Feeney, his right little finger was cut.

[Petitioner] goes on to state that while he was struggling with Feeney, Jackie was able to open her door. [Petitioner] alleges that Feeney then broke away, and [petitioner] got scared and opened his door and ran. He claims to have looked back to see Feeney chasing Jackie across the street, and he says he could still hear both of them screaming. [Petitioner] claims he ran home and that the remainder of his statement is the same, except that he saw Feeney four or five days later and Feeney threatened him if he told anyone about what he saw happen.

In contrast to [petitioner]'s statements, Feeney testified that he did not know anything about the murder until he was arrested by the police and questioned about the incident.

Detective James Varnon testified that he analyzed the crime scene for the Fort Worth Police Department. Varnon testified that the interior of the car was very bloody, but that he found no blood stains in the back seat area of the car. He further testified that based on the pattern of blood stains and the size of the blood splatters inside the car, he believed a very forceful struggle took place inside the car.

Varnon testified that he lifted fifty-three

4

fingerprints from the car. Neither Varnon or Loyd
Courtney, who is the fingerprint identification person
with the Fort Worth Police Department, was able to
match any or these prints to anyone other than
[petitioner] or the victim. Courtney specifically
testified that he was unable to match any of the
fingerprints to Feeney. However, not all of the prints
lifted were useable for identification purposes.

    Roger Thieleman, a longtime acquaintance of
[petitioner], also testified for the State. Thieleman
testified that he had talked with [petitioner] about
the incident after [petitioner] had been arrested and
later released. According to Thieleman, when he asked
[petitioner] about the incident, [petitioner] stated:
"The bitch owed me money."

    When Thieleman pursued the conversation,
[petitioner] explained that Jackie had owed
[petitioner] money for a while and had been dodging
him. [Petitioner] said he had heard Jackie had a
quarter pound of dope and a lot of money, so
[petitioner] acted like he was trying to set up a drug
buy for someone else. [Petitioner] told Thieleman that
he and Jackie met to do the deal. According to
Thieleman, [petitioner] stated: "Whenever she told me
she had it, I popped my knife out and I was just going
to take it from her, and I told her to give it to me."
[Petitioner] further stated: "She started up on me so I
fucked her off." Thieleman understood this to mean that
Jackie started fighting with [petitioner] and
[petitioner] used the knife on her. When Thieleman
asked [petitioner] if the police had the knife,
[petitioner] told him that "Joe" had the knife.
[Petitioner] also told Thieleman: "Just keep it between
me and you because nobody really knows what happened.

    Joe Johnson testified that he was acquainted with
[petitioner] and that [petitioner] had approached him
to trade knives about a month after [petitioner] was
released on the murder charge. [Petitioner] told
Johnson that he needed to get rid of the knife, and
that the knife may need to be cleaned because of some
blood around the base, or something.

(SHR01 22-26, doc. 10-1.)

Nearly eighteen years after petitioner's conviction, in

August 2010, Thieleman, who was confined in TDCJ on an unrelated state conviction(s), sent a letter to petitioner's trial counsel, William H. Ray, informing counsel that he had committed perjury at the urging of the prosecuting attorney in petitioner's case. (SHR04 18, 20-23, doc. 10-12.) Counsel sent a redacted copy of the letter to petitioner on August 18, 2010. (Id. at 19.)

## II. ISSUES

By way of this petition, petitioner raises one ground for relief, in which he claims the "state suborned the false/perjured testimony" of Thieleman. (Pet. 6, doc. 1.) Specifically, he asserts that the state allowed Thieleman to commit perjury concerning whether he would receive a favorable plea in his separate criminal case(s) in exchange for his testimony against petitioner and failed to disclose that Thieleman's testimony was a condition of said plea. (Pet'r's Mem. 7, doc. 2.)

## III. STATUTE OF LIMITATIONS

Respondent believes the petition is time-barred. (Resp't's Answer at 4-10, doc. 11.) Title 28 U.S.C. § 2244(d) imposes a one-year statute of limitations for filing a petition for federal habeas corpus relief. 28 U.S.C. § 2244(d). Section 2244(d) provides:

> (1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of—
>
> (A) the date on which the judgment

became final by the conclusion of direct
review or the expiration of the time for
seeking such review;

(B) the date on which the impediment to
filing an application created by State action
in violation of the Constitution or laws of
the United States is removed, if the
applicant was prevented from filing by such
State action;

(C) the date on which the constitutional
right asserted was initially recognized by
the Supreme Court, if the right has been
newly recognized by the Supreme Court and
made retroactively applicable to cases on
collateral review; or

(D) the date on which the factual
predicate of the claim or claims presented
could have been discovered through the
exercise of due diligence.

(2) The time during which a properly filed
application for State post-conviction or other
collateral review with respect to the pertinent
judgment or claim is pending shall not be counted
toward any period of limitation under this subsection.

*Id.* § 2244(d)(1)-(2).

If a federal petition under § 2254 alleges newly discovered evidence, the filing deadline is one year from the "the date on which the factual predicate of the claim . . . could have been discovered through the exercise of due diligence." *Id.* § 2244(d)(1)(D). Petitioner asserts that the letter "along with new [corroborating] evidence provided by the Tarrant County District Attorney's office when responding to [his] state writ, which was evidence that could not have been discovered through the exercise of due diligence, provided the factual predicate forming the

7

basis of his claim(s)." (Pet'r's Resp. 2-3, doc. 15.) Because the "latest of" the "new" evidence was discovered during the pendency of his state habeas application, he argues that limitations did not begin until his state application was denied.[3] (Id. at 3.) Petitioner confuses his knowledge of the factual predicate for his claims with the time permitted for gathering evidence in support of the claims. Due diligence in obtaining knowledge of the factual predicate of a claim triggers the limitation period, not the gathering of evidence in support of that claim. The relevant inquiry focuses on when the factual predicate of a claim could have been discovered, as opposed to the date on which the petitioner has in his possession all evidence to support his claim. *See Johnson v. McBride*, 381 F.3d 587, 589 (7th Cir. 2004), *cert. denied*, 544 U.S. 926 (2005) (providing "[a] desire to see more information in the hope that something will turn up differs from 'the factual predicate of [a] claim or claims' for purposes of § 2244(d)(1)(D)"). Section 2244(d)(1)(D) does not convey a statutory right to an extended delay while a habeas petitioner gathers every possible scrap of evidence that might, by negative implication, support his claim." *Flanagan v. Johnson*, 154 F.3d

---

[3]Petitioner cites to the United States Supreme Court's decision in *McQuiggin v. Perkins*, 569 U.S. 383 (2013), in support of his argument that the factual predicate of his claim could not have been discovered until the state provided the "'latest of' the new evidence" in its February 25, 2015, amended response to his state application. (Pet'r's Resp. 2-3, doc. 15; SHR04 145-235, docs. 10-12 & 10-13.) In contrast, however, in *McQuiggin* the petitioner acknowledged that his petition was untimely under § 2244(d)(1)(D) and he sought an equitable exception to the time period proscribed by the statute.

8

196, 199 (5th Cir. 1998). In this case, it was only after a lengthy investigation by the state that petitioner's alleged corroborating "new" evidence was discovered. Thus, petitioner's contention that the limitations period did not begin to run until after additional evidence was obtained during the state habeas proceeding is without merit. The factual predicate of petitioner's claim, the letter, was available to him well before he presented it in a state habeas application.

For purposes of § 2244(d)(1)(D), petitioner discovered the factual predicate of his claim on August 18, 2010, the date he received the copy of Thieleman's letter. Therefore, his federal petition was due on or before August 18, 2011. (SHR04 10, 10-21.) Consequently, his petition filed on March 13, 2017, is untimely unless he is entitled to tolling of the limitations period.

Tolling of the limitations period may be appropriate under the statutory-tolling provision in § 2244(d)(2) and/or as a matter of equity. Petitioner's state habeas application filed on January 30, 2012, after limitations had already expired, did not operate to toll limitations. *See Moore v. Cain*, 298 F.3d 361, 366-67 (5th Cir. 2002); *Scott v. Johnson*, 227 F.3d 260, 263 (5th Cir. 2000). And, petitioner expressly states that he "does not wish to assert a right to equitable tolling, believing his petition to be timely." (Pet'r's Resp. 5, doc. 15.)

Petitioner's federal petition was due on or before August

9

18, 2011, and his petition filed on March 13, 2017, is therefore untimely.

For the reasons discussed herein, it is ORDERED that petitioner's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 be, and is hereby, dismissed as time-barred. A certificate of appealability is DENIED.

SIGNED July **19**, 2018.

_____
JOHN MCBRYDE
UNITED STATES DISTRICT JUDGE